# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DOCULYNX, INC., a Nebraska Corporation, | CASE NO. 8:15CV361 |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| ICB CONSULTING, INC., a Colorado Corporation, | |
| Defendant. | |

This matter is before the Court on the Motion to Dismiss[1] (Filing No. 10) submitted by Defendant ICB Consulting, Inc. ("ICB"). ICB asks the Court to dismiss the Complaint (Filing No. 1) filed by Plaintiff docuLynx, Inc. ("docuLynx") for lack of personal jurisdiction over ICB, and improper venue in Nebraska. In the alternative, ICB asks the Court to transfer the case to the District of Colorado pursuant to 28 U.S.C. § 1406(a) due to improper venue in Nebraska, or pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses. For the reasons discussed below, the Court will dismiss this action, without prejudice, for lack of personal jurisdiction over ICB.

## STANDARDS OF REVIEW

**I. Personal Jurisdiction**

To survive a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff must plead "sufficient facts to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (quoting *K-V Pharm.*

---

[1] Although the Motion is captioned as a "Brief," it is properly docketed as a Motion. ICB's Brief in support of the Motion appears at Filing No. 11.

*Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011)). When jurisdiction is challenged, the plaintiff must "make a prima facie showing of personal jurisdiction over the challenging defendant." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citation omitted). The court "must view the evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor . . . ." *Fastpath, Inc.*, 760 F.3d at 820 (citation omitted).

In determining whether personal jurisdiction over a nonresident defendant exists, the Court must determine whether: (1) the requirements of the Nebraska long-arm statute are satisfied and (2) the exercise of jurisdiction is permitted by the Due Process Clause of the Fourteenth Amendment. *See Eagle Tech. v. Expander Ams., Inc.*, 783 F.3d 1131, 1136 (8th Cir. 2015). Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536,[1] has been interpreted to extend jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause of the United States Constitution. *Pecoraro v. Sky Ranch for*

---

[1] Section 25-536 states:

A court may exercise personal jurisdiction over a person:

(1) Who acts directly or by an agent, as to a cause of action arising from the person:

    (a) Transacting any business in this state;

    (b) Contracting to supply services or things in this state;

    (c) Causing tortious injury by an act or omission in this state;

    (d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

    (e) Having an interest in, using, or possessing real property in this state; or

    (f) Contracting to insure any person, property, or risk located within this state at the time of contracting; or

(2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

*Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). Thus, the Court need only determine whether the assertion of jurisdiction offends constitutional limits.

The Supreme Court has recognized two categories of personal jurisdiction, general and specific jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754-55 (2014). "Under the theory of general jurisdiction, a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 808, 414-15 (1984)). In other words, the contacts are "so 'continuous and systematic' as to render the defendant essentially at home in the forum [s]tate." *Daimler AG*, 134 S. Ct. at 758, n.11 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

Under the theory of specific jurisdiction, a forum state has personal jurisdiction over a defendant "when [the] defendant has certain contacts with the forum [s]tate and the cause of action arises out of those contacts." *Creative Calling Sols.,* 799 F.3d at 980. In other words, a court will have specific jurisdiction over a cause of action "arising from or related to a defendant's actions within the forum state." *Fastpath, Inc.*, 760 F.3d at 820 (quoting *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994)).

Under either theory, due process requires that the defendant have "minimum contacts" with the forum state such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463

(1940)). A nonresident defendant's connection with the forum state must be such that the defendant "should reasonably anticipate being haled [sic] into court there." *Fastpath, Inc.*, 760 F.3d at 820-21 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). It is essential that there be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Creative Calling Sols., Inc.*, 799 F.3d at 980 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)). "Purposeful availment" means that the defendant's contacts with the forum state must not be "random," "fortuitous," "attenuated," or the result of "unilateral activity of another party or a third person." *Fastpath, Inc.*, 760 F.3d at 820-21 (quoting *Burger King Corp.*, 471 U.S. at 475 (internal quotation marks omitted)). A defendant's minimum contacts with the forum state "must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Steinbuch v. Cutler*, 518 F.3d 580, 590 (8th Cir. 2008) (quoting *Pecoraro,* 340 F.3d at 562)).

The Eighth Circuit Court of Appeals has developed "a five-factor test to determine the sufficiency of a non-resident defendant's contacts with the forum state." *Fastpath, Inc.*, 760 F.3d at 821 (citing *Dever*, 380 F.3d at 1073-74). The factors are: "1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relation of the cause of action to the contacts;[2] (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Id*. The Eighth Circuit gives greater weight to the first three factors. *Id*. (citation omitted). To survive a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff must

---

[2] The third factor is "immaterial" for evaluating general jurisdiction. *Steinbuch*, 518 F.3d at 586.

plead "sufficient facts 'to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" *K-V Pharm.,* 648 F.3d at 591-92. When jurisdiction is challenged, the "'nonmoving party need only make a prima facie showing of jurisdiction.'" *Pangaea, Inc. v. Flying Burrito LLC,* 647 F.3d 741, 745 (8th Cir. 2011) (quoting *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991)). "'[T]he court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party.'" *Id.*

## II.  Improper Venue

Federal Rule of Civil Procedure 12(b)(3) permits a party to raise the defense of "improper venue" by motion. "[V]enue of all civil actions brought in district courts of the United States" is governed by 28 U.S.C. § 1391. Section 1391(b) provides:

> A civil action may be brought in—
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. at § 1391(b).

Venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" only "if there is no district in which an action may otherwise be brought as provided in" § 1391. *Id.* at §1391(b)(3). Therefore, the fact that a defendant is subject to personal jurisdiction in Nebraska does not make a

Nebraska court a proper venue unless "there is no district in which [this] action may otherwise [have] be[en] brought." This means that the Court must look to subsections (1) and (2) of § 1391(b) before looking to subsection (3) to determine if venue is proper.[3]

With respect to § 1391(b)(1), the venue statute provides that a "natural person . . . [is] deemed to reside in the judicial district in which that person is domiciled," and "an entity with the capacity to sue and be sued . . . [is] deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* at § 1391(c)(1), (2). "If natural persons are involved, it is their residence at the time the action is commenced, not when the claim arose, that is decisive in ascertaining the propriety of federal venue." 14D Charles Alan Wright et al., Federal Practice and Procedure § 3805 (3d ed. 2012). The time the claim arose is decisive in ascertaining the propriety of venue when an entity is involved. *Great Am. Ins. Co. v. Lesser Enters., Inc.*, 353 F.2d 997, 1001 (8th Cir. 1965).

---

[3] *See* 14D Charles Alan Wright et al., Federal Practice and Procedure § 3806.2 (3d ed. 2012):

In both federal question and diversity cases, the general venue statute directs plaintiffs to lay venue on the basis of the defendants' residence or in a judicial district in which a substantial part of the events or omissions that gave rise to the claim occurred. In some cases, however, there will be no district that satisfies either of these two broad venue provisions. To avoid the possibility of venue gaps, the general venue statute contains a fallback provision that can be used when, and only when, there is no district in which a case otherwise could be brought in accordance with the venue statutes. . . .

It bears emphasis that . . . th[is] provision[ ] become[s] applicable only when there is no district in which the case otherwise could be brought that would be in accordance with the venue statutes. . . .

[T]he burden is placed on the defendant to make the affirmative showing that there is another judicial district in which the case otherwise could be brought.

In 2011, § 1391 was amended so that it does not differentiate between cases brought pursuant to a court's diversity jurisdiction and cases brought pursuant to a court's federal question jurisdiction. *See* Pub. L. No. 112-63, Title II, § 202, Dec. 7, 2011, 125 Stat. 763. As a result, although there used to be two "fallback provisions"-one for diversity cases, one for federal question cases-now there is only one fall back provision that applies to "all civil actions brought in district courts of the United States." *See* 28 U.S.C. § 1391(a), (b)(3).

With respect to § 1391(b)(2), "[t]he statute does not posit a single appropriate district for venue; venue may be proper in any of a number of districts, provided only that a substantial part of the events giving rise to the claim occurred there," *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (citing *Setco Ents. Corp. v. Robbins,* 19 F.3d 1278, 1281 (8th Cir.1994)), or that "a substantial part of property that is the subject of the action is situated" there. 28 U.S.C. § 1391(b)(2). The question is not which is the "best" venue, but "whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." *Pecoraro,* 340 F.3d at 563 (citing *Setco*, 19 F.3d at 1281).

### III. Transfer of Venue for Convenience of Parties and Witnesses

Where jurisdiction and venue are proper, transfer of venue is governed by 28 U.S.C. § 1404. Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The Court is not limited to these factors, but must consider all relevant factors and examine the particular circumstances in the case at hand. *Terra Int'l., Inc. v. Miss. Chem. Corp*. (*Terra II*), 119 F.3d 688, 691 (8th Cir. 1997). The moving party bears the burden of showing why a change of forum is warranted, *Stinnett v. Third Nat'l Bank of Hampden Cnty.*, 443 F. Supp. 1014, 1017 (D. Minn. 1978).

Courts consider several factors when balancing the convenience of the parties and witnesses, such as: (1) the convenience of the parties, (2) the convenience of the witnesses–including the willingness of witnesses to appear, the ability to subpoena

7

witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law.  *Terra II*, 119 F.3d at 696.  "[S]heer numbers of witnesses will not decide which way the convenience factor tips . . . [and] [m]erely shifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue."  *Id.* at 696-97 (quotations and citations omitted).

Courts also consider several factors when determining whether the interests of justice support transfer of venue, including "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law."  *Id.* at 696. Generally, "federal courts give considerable deference to a plaintiff's choice of forum." *Id.* at 695.  The substantial deference that is generally given to a plaintiff's choice of forum is given even "more weight when the chosen forum is also the plaintiff's residence." *Venteicher v. Smyrna*, No. 8:09CV272, 2009 WL 3254498, at *10 (D. Neb. Oct. 8, 2009) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71, 72 (2d Cir. 2000); 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3849 (3d ed. 2007)).

## FACTS

### I. The Complaint

The following is a summary of the facts alleged in the Complaint (Filing No. 1), pertinent to the pending Motion:

8

DocuLynx is a Nebraska corporation with its principal place of business in Nebraska; and ICB is a Colorado corporation with its principal place of business in Colorado. The amount in controversy exceeds $75,000.00, and docuLynx has invoked the Court's diversity jurisdiction.

DocuLynx is a national provider of document and information management solutions. In December 2013, docuLynx selected ICB to help docuLynx migrate its financial platform to Microsoft Dynamics GP, following submission of a proposal from ICB. In February 2014, ICB submitted a revised proposal and an estimate of project costs. In April 2015, ICB demanded payment of outstanding invoices regarding its efforts to migrate and install the system. ICB later pursued collection tactics that docuLynx considered to be intimidating, threatening, and defamatory. In May 2015, ICB retained an attorney and a collections firm. Although the parties entered into settlement negotiations, they were unable to reach a settlement, and docuLynx has been unable to "bring the system into a truly 'live' environment." (Complaint, Filing No. 1 at ¶ 18.)

DocuLynx brought this action on October 5, 2015, presenting five claims for relief: (1) breach of contract, (2) unjust enrichment, (3) contract damages, (4) tortious interference with contractual relations, and (5) commercial defamation. DocuLynx attached 35 pages of documents to the Complaint in support of its claims, but nothing in those documents suggests any factual connection with the state of Nebraska.

## II. ICB's Evidence

In support of its Motion, ICB has submitted the declaration of Devin Johnson ("Johnson"), ICB's owner (Filing No. 12-1). Johnson states that the contract negotiations between docuLynx and ICB occurred in Colorado; the contract was entered into in

Colorado; and all work performed by ICB under the contract was performed in Colorado. Johnson believes that all witnesses having knowledge of the facts giving rise to the suit are in Colorado. *Id.*

### III. DocuLynx's Evidence

In opposition to ICB's Motion, docuLynx has submitted the declaration of Michael Liess ("Liess"), docuLynx's Chief Executive Officer (Filing No. 20-2). Liess states that "ICB regularly interfaced" with docuLynx agents or employees in San Diego, California, and Phoenix, Arizona. *Id.* at ¶¶ 3, 4. Liess also states that docuLynx's billing systems and servers, and individuals responsible for maintaining them, are in Omaha. *Id.* at ¶ 3. Leiss asserts that ICB was "well aware" that docuLynx "had offices, investors, employees and business located outside of Colorado." *Id*. at ¶ 5. He concludes that ICB was "well aware" that its work on docuLynx's computer systems "meant that it was significantly interfacing" with individuals in Omaha. *Id*. at ¶ 4.

**DISCUSSION**

Because there is no evidence that ICB's contacts with Nebraska satisfy the requirements for general jurisdiction, docuLynx must make a prima facie showing that ICB had sufficient minimum contacts with Nebraska to establish specific jurisdiction. Doculynx argues that it can make this showing on two theories. (See Plaintiff's Brief, Filing No. 19 at 2.) First, docuLynx contends that ICB contracted to supply services in Nebraska, thereby transacting business in this state, and conferring personal jurisdiction pursuant to Neb. Rev. Stat. § 25-536(1)(a) (Reissue 2008). Second, doculynx contends that ICB caused tortious injury in Nebraska and derived substantial revenue from providing services

10

in Nebraska, conferring personal jurisdiction pursuant to Neb. Rev. Stat. § 25-536(1)(d) (Reissue 2008).

Construing the evidence in a light most favorable to docuLynx, there is no factual basis from which the Court can infer that ICB had contacts with the state of Nebraska such that ICB could reasonably have anticipated being haled into court here. Liess's assertion that ICB was "well aware" of the location of docuLynx's billing systems and servers, and "interfaced" with individuals in Nebraska, does not satisfy the minimal contacts necessary for personal jurisdiction.

A defendant purposefully avails itself of the protections of a state's laws when its connection with the forum state is not "random," "fortuitous," "attenuated," or the result of "unilateral activity of another party or third person." *Fastpath, Inc.*, 760 F.3d at 820-21 (quoting *Burger King Corp.*, 471 U.S. at 475 (internal quotation marks omitted)). The record before the Court indicates that ICB and docuLynx conducted their negotiations in Colorado, and ICB performed its work in Colorado. Only docuLynx's unilateral activity brought the product of ICB's services into Nebraska. Nor can the Court conclude that ICB purposefully availed itself of the protections of Nebraska's laws by interfacing with individuals in Nebraska. There is no evidence of communications directed from ICB to docuLynx agents or employees in Nebraska Even if there were such evidence, this Court has stated that "frequent communications, when taken together with some other action directed toward the forum state, may establish minimum contacts." *Venteicher v. Smyrna Air Center*, Inc., 2009 WL 3254498, at *4 (D. Neb. Oct. 9, 2009) (emphasis added). Communications alone are insufficient for this Court to establish personal jurisdiction.

Although Nebraska "has an interest in providing its residents with a forum, that

interest 'cannot make up for the absence of minimum contacts.'" *Fastpath, Inc.*, 760 F.3d at 824 (quoting *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 525 (8th Cir. 1996)).

Because the Court lacks personal jurisdiction over ICB, the Complaint will be dismissed without prejudice, and the parties' disputes as to venue are moot.

Accordingly,

IT IS ORDERED:

1. The Motion to Dismiss (Filing No. 10) submitted by Defendant ICB Consulting, Inc., is granted;

2. Plaintiff docuLynx, Inc.'s Complaint (Filing No. 1) is dismissed, without prejudice; and

3. A separate Judgment will be issued.

. .DATED this 10th day of February, 2016.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge